✎ JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a)  PLAINTIFFS** California Resources Agency, et al.
(See addendum for additional Plaintiffs)

**DEFENDANTS** Unites States Department of Agriculture, et al.
(See addendum for additional Defendants)

**(b)** County of Residence of First Listed Plaintiff SACRAMENTO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Brian Hembacher, Deputy Atty. General
Office of the Attorney General
300 S. Spring, Suite 1702
Los Angeles, CA 90013

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 5 U.S.C. §701, et seq., 16 U.S.C. §1604 et seq., 42 U.S.C.§ 4321 et seq.

Brief description of cause:
US Forest Service violated APA, NEPA and National Forest Management Act.

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**  PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE". No. C 06-16523 Judge: William Alsup (WHA)

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE
February 8, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.      (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.      Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.      Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.      Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.      Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example:      U.S. Civil Statute: 47 USC 553
                              Brief Description: Unauthorized reception of cable service

**VII.      Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.      Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**ADDENDUM**
**for Civil Cover Sheet**

Case Number:_____

**Additional Plaintiffs**

CALIFORNIA DEPARTMENT OF
FORESTRY AND FIRE PROTECTION,
PEOPLE OF THE STATE OF
CALIFORNIA, *ex rel.* CALIFORNIA
ATTORNEY GENERAL EDMUND G.
BROWN JR.,

**Additional Defendants**

ED SCHAFER, Secretary of Agriculture;
UNITED STATES FOREST SERVICE; and
GAIL KIMBALL, Chief of the United
States Forest Service, and RANDY
MOORE, Regional Forester, Pacific
Southwest Region, United States Forest
Service,

EDMUND G. BROWN JR., Attorney General
  of the State of California
THEODORA BERGER
J. MATTHEW RODRIGUEZ
  Senior Assistant Attorneys General
BRIAN HEMBACHER, State Bar No. 90428
PETER SOUTHWORTH, State Bar No.  160522
  Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Telephone: (213) 897-2638
Facsimile:  (213) 897-2802

Attorneys for Plaintiffs California Resources Agency,
California Department of Forestry and Fire Protection, and
People of the  State of California,  *ex rel.* California
Attorney General Edmund G. Brown Jr.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RESOURCES AGENCY, CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CALIFORNIA ATTORNEY GENERAL EDMUND G. BROWN JR., <br><br>               Plaintiffs, <br><br>      v. <br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; ED SCHAFER, Secretary of Agriculture; UNITED STATES FOREST SERVICE; and GAIL KIMBALL, Chief of the United States Forest Service, and RANDY MOORE, Regional Forester, Pacific Southwest Region, United States Forest Service, <br><br>             Defendants. | CIV. NO. <br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br>(Administrative Procedure Act, 5 U.S.C. §701 *et seq.*; National Forest Management Act, 16 U.S.C. § 1604, *et seq;* and National Environmental Policy Act, 42 U.S.C. §4321 *et seq.,*) |

**INTRODUCTION**

1.    The California Resources Agency and the California Department of Forestry and Fire Protection (collectively, "Resources Agency") and the People of the State of California, ex rel. California Attorney General Edmund G. Brown Jr. ("the Attorney General"), hereby challenge the illegal actions of the United States Forest Service ("Forest Service") in approving the forest management plans ("Plans") for the four national forests in Southern California.  Because the Plans will guide the management and uses of all areas in each forest for at least the next ten years, the improper approval of the Plans should be enjoined and set aside to prevent significant damage to unique and valuable environmental values that may otherwise be harmed or lost.

**The Southern California National Forests**

2.    The four southern California national forests (Angeles, Los Padres, Cleveland, and San Bernardino) include over 3.5 million acres of federally-managed public land, from Big Sur in the north to the Mexican border.  The four forests include a tremendous range of geologic, topographic, and climatic diversity, ranging from alpine areas at ten thousand feet above sea level to the seashore.  Within their boundaries are mountain forests, chaparral, foothill oak woodlands, savannas, deserts, and specialized habitat niches, including ecological communities found nowhere else.  The forests have a correspondingly high level of vegetative diversity and wide range of habitat for wildlife, ranging from Monterey Coastal habitat containing the southernmost redwoods to wild and remote high desert areas.

3.    The Southern California forests are also four of the most urban-impacted forest units in the National Forest system, making their need for protection all the greater.  Over twenty million people live within an hour's drive of at least one of the four national forests.  The rugged, wild landscapes of all four forests are valued for the visual contrast they provide in this rapidly-urbanizing region.  Angeles National Forest is comprised of 662,983 acres immediately adjacent to the Los Angeles Metropolitan area.  Cleveland National Forest contains 420,877 acres in fast-developing Orange and San Diego Counties.  San Bernardino National Forest abuts the Los Angeles metropolitan area and its 665,753 acres are also adjacent to the growing cities of the "Inland Empire."   Los Padres is one of the largest national forests, at 1,781,364 acres, and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   stretches from Point Sur, Monterey County, south to the border of Los Angeles and Ventura

2   Counties, where it reaches more than 50 miles inland to the border of the Angeles National

3   Forest.  As the population continues to increase, so too does the desire to conserve these

4   remaining vestiges of regional open space and scenic heritage in a natural or near-natural

5   appearing condition.

6        4.   Similarly, the four forests offer a particularly valuable haven for native plants and

7   animals, and provide unique and irreplaceable habitat for threatened, endangered, and sensitive

8   species in Southern California.  Combined with a mix of local, state, federal, and private lands,

9   they form a regional system of open space and habitat preserves within one of the most highly

10  urbanized landscapes in the United States and provide the only refuge for many species imperilled

11  by loss of habitat outside the four forests.  The Los Padres National Forest, for instance,  is the

12  principal home of the California Condor and the site of a major effort to bring this endangered

13  species back from the edge of extinction.  The Forest Service has acknowledged the habitat

14  provided by the four forests as one of the world's "biodiversity hotspots"---  areas where

15  exceptional concentrations of endemic species are undergoing marked loss of habitat.  The four

16  forests currently provide habitat for at least 31 federally-listed threatened and endangered animals

17  and 29 such plants, as well as 34 animal species and 134 plant species recognized as sensitive.

18  This represents a notable increase from the 17 listed threatened and endangered species in the

19  four national forests in 1986.  Thus, the need for protection of this habitat is all the more

20  important.

21            **Summary of Allegations**

22       5.   The Forest Service's approval of the Plans violated the National Forest Management

23  Act ("NFMA") and the National Environmental Policy Act ("NEPA").

24       6.   The NFMA mandates that the Forest Service develop a land and resource

25  management plan for every forest and that development of those plans be "coordinated with the

26  land and resource management planning of State . . . governments . . ." 16 U.S.C. § 1604(a).

27  Specifically, the Forest Service was required to "coordinate regional and forest planning with the

28  equivalent and related planning efforts of  . . . State . . . governments."  36 C.F.R. § 219.7(b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    California has keen and well-established interests in wildlife, watersheds, water quality,

2    wilderness, and other natural resources, both within national forests and on neighboring private

3    and state lands.  Neither these issues, nor the State's interest in planning for their protection, stop

4    at the national forest boundary.  Thus, under both the NFMA and its regulations, the Forest

5    Service was required to take state planning into account when formulating the Plans.

6        7.    Defendants utterly violated these unambiguous NFMA mandates.  In particular, the

7    Forest Service failed to even acknowledge state policy on roadless areas in national forests in

8    California, let alone attempt to coordinate with those protections.  Despite explicit state efforts to

9    preserve these relatively pristine areas through a specified moratorium on road construction, the

10   Plans unexpectedly adopted land use zones that allow road construction in hundreds of thousands

11   of acres of roadless areas in all four forests in Southern California.  This disregard of state policy

12   was a particularly egregious violation of the NFMA and its regulations, as the Resources Agency

13   had repeatedly insisted that the Forest Service address this specific issue during the forest

14   planning process and the Forest Service had provided written assurances that it would abide by

15   those policies on a statewide basis.

16       8.    Moreover, the written public analysis of the Plans also violated NFMA requirements

17   that the Forest Service specifically document attempts to reconcile federal planning with state

18   efforts, including specific written consideration of state "objectives . . . as expressed in [state]

19   plans and policies,"  and "assessment of the interrelated impacts of these plans and policies" with

20   the federal forest planning.  36 C.F.R. § 219.7(c)(1)-(2).  In particular, "where conflicts with

21   Forest Service Planning are identified," the analysis must display "consideration of alternatives

22   for their resolution." *Id.*, § 219.7(c)(4).  Here, however, the Plans and their analyses are

23   completely silent on California's policy on roadless areas and the Plans' contrary treatment of

24   those undeveloped areas.  Thus, the Forest Service doubly violated NFMA– it denied both

25   California's right to have its state policies incorporated in the forest planning process and to have

26   that important consideration documented for review by state and federal officials and the public.

27       9.    The Forest Service's approval of the Plans also violated NEPA.  The Ninth Circuit

28   has addressed the minimum standards for an Environmental Impact Statement ("EIS") covering

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    planning decisions that guide potential uses of roadless areas in national forests.  *California v.*

2    *Block,* 690 F.2d 753 (9th Cir. 1982).  There, an EIS was determined inadequate by the Ninth

3    Circuit because it did not contain certain information on roadless areas:  their habitat areas,

4    wildlife types and quantity, the presence of rare and endangered species, or any unique

5    characteristics of those areas.  *Id.,* at 763.  Instead, the environmental analysis only identified the

6    location and acreage of roadless areas, basic landform and ecosystem types, the number of

7    wilderness-associated species in the area, and a numerical rating of wilderness attributes.  *Id*.

8         10.    Despite these specific mandates in *California v. Block,* the present EIS for the Plans

9    only discloses a single piece of information on the Forest Service's ultimate decision—the gross

10   acreage of roadless areas in all four forests allocated to zones in which road construction could be

11   approved.  The Forest Service did not attempt even to provide the kind of basic information on

12   these areas that was held inadequate in *California v. Block* (basic landform, etc), let alone the

13   analysis of environmental impacts actually required by that decision (habitat areas, wildlife types,

14   etc.)  The EIS thus violated NEPA by completely failing to inform the decision-maker and public

15   about the environmental impacts of the Plan on roadless areas.

16        11.    NEPA requires a discussion of impacts from an action and the means to mitigate

17   adverse environmental impacts of an action.  40 C.F.R. §1501.1(d);  40 C.F.R. § 1502.16(h).  The

18   Attorney General alleges that the Forest Service acted contrary to this basic principle in that it did

19   not adequately analyze the environmental impacts caused by making more areas and trails

20   available for off-highway vehicles, and failed to justify its rationale for choosing so little forest

21   land for wilderness protection.  Further, the Final EIS for the revised Plans violates NEPA in that

22   it fails to adequately discuss the impacts of the Forest Service's decisions that will allow more

23   off-highway vehicle access over the life of the Plans.  Finally, the Attorney General will show

24   that the Final EIS did not adequately review impacts and mitigation for harm to the endangered

25   California Condor that could result from more oil and gas exploration in Los Padres National

26   Forest.

27        12.    The Attorney General also alleges the Forest Service has violated NEPA by illegally

28   deferring its discussion and consideration of impacts from the project and mitigation that would

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   address those impacts.  Such analysis should be done at the earliest possible time to insure that

2   planning and decisions reflect environmental values, to avoid delays later in the process, and to

3   head off potential conflicts.  40 C.F.R. § 1501.2.  Here, the Forest Service defers further

4   discussion of the mitigation of environmental harm to California Condors to future site-specific

5   surveys and consultations with the U.S. Fish and Wildlife Service.  Given the foreseeable threat

6   to the condors' viability, the deferral of analysis to future consultation is inadequate under

7   NEPA.  The Forest Service also deferred its discussion of the impacts of its decision to open

8   more land to off-highway vehicle uses or to improve existing trails until particular routes are

9   recommended in the future and until "design and compliance strategies" can be developed at

10   some later date.  This deferral of analysis deprives the public and decision makers of essential

11   knowledge necessary for informed decision making and avoids the central purpose of an EIS as a

12   informational document.

13       13.    NEPA requires agencies, to the fullest extent possible, to study, develop, and

14   describe appropriate alternatives and recommend courses of action in any proposal which

15   involves unresolved conflicts concerning alternative uses of available resources.  42 U.S.C. §

16   4332(2)(E).  NEPA requires that this analysis identify and assess reasonable alternatives to

17   proposed actions in order to avoid or minimize adverse impacts on the environment.  40 C.F.R. §

18   1500.2(e).  The Attorney General alleges that the Forest Service violated NEPA by selecting

19   Alternative 4a without providing a reasonable range of alternatives.  In the Draft EIS, it included

20   two alternatives that contained provisions it knew could not be adopted, thereby setting up

21   "strawmen" it could easily knock down.  The Forest Service's failure to construct and evaluate

22   meaningful alternatives to compete with the preferred alternative, including alternatives that

23   would allow for more wilderness, violate its obligations under NEPA.

24                                      **JURISDICTION**

25       14.    This court has jurisdiction pursuant to 28 U.S.C. §1331 (action arising under the

26   laws of the United States) and 5 U.S.C. §§701-706 (Administrative Procedure Act or "APA").

27       15.    An actual controversy exists between the parties within the meaning of 28 U.S.C. //

28   / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   §2201(a).  This court may grant declaratory relief, injunctive relief, and any additional relief

2   available under 28 U.S.C. §§2201, 2202, and 5 U.S.C. §§705, 706.

3       16.    Following approval of the Plans, the Resources Agency timely filed administrative

4   appeals to the Chief of the Forest Service on or about July 11, 2006 and the Attorney General did

5   so on or about July 18, 2006. The Chief of the Forest Service denied each administrative appeal

6   on or about July 24, 2007.

7       17.    On or about September 21, 2007,  the United States Department of Agriculture gave

8   notice that it had elected not to exercise discretionary review of all plaintiff's administrative

9   appeals of the Plans and stated  "[t]his decision is the Department of Agriculture's final

10  determination on your appeal under 36 CFR 217."  There has been final agency action within the

11  meaning of the Administrative Procedure Act and therefore the approval of the Plans and their

12  review under NEPA are judicially reviewable under the APA.  5 U.S.C. §§702, 704.

13                              **VENUE**

14      18.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e) because

15  Plaintiff Attorney General has offices in this judicial district, and therefore resides in this judicial

16  district, and real property is not the subject of this action.

17                      **INTRADISTRICT ASSIGNMENT**

18      19.    For purposes of Intradistrict Assignment, the case arises equally in the San Francisco

19  and Alameda counties because the Attorney General has offices in both counties.

20                              **PARTIES**

21      20.    Plaintiff  PEOPLE OF THE STATE OF CALIFORNIA ("People') bring this action

22  by and through the Attorney General.  The Attorney General of California is the chief law

23  enforcement officer of the State and has the authority to file civil actions in order to protect

24  public rights and interests, including environmental protection.  Cal. Const., art V, §13; Cal.

25  Gov. Code §§12600-12612.  This challenge is brought pursuant to the Attorney General's

26  independent, constitutional, common law, and statutory authority to represent the public interest.

27  The People have an interest in the use and enjoyment of the four Southern California national

28  forests, as well as an interest in preserving and protecting the natural and biological resources of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    the forests.  The People have suffered a legal wrong because of the Forest Service's action and

2    have been adversely affected or aggrieved by such action within the meaning of the APA, NEPA

3    and the NFMA.

4        21.    Plaintiff CALIFORNIA RESOURCES AGENCY is one of the seven cabinet-level

5    agencies of California state government.  Cal. Gov. Code, §12800.  It is headed by a Secretary

6    appointed by the Governor (*id.* § 12801) and includes the California Department of Forestry and

7    Fire Protection.  *Id.* § 12805.

8        22.    Plaintiff  CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE

9    PROTECTION is a department in the Resources Agency.  Cal. Pub. Resources Code, § 701.  The

10    Department is responsible for, *inter alia*, coordinated programs of fire protection, fire prevention,

11    maintenance, and enhancement of the state's forest, range, and brushland resources.  *Id.* § 713.

12        23.    Defendant UNITED STATES DEPARTMENT OF AGRICULTURE is the federal

13    agency responsible for the activities of the United States Forest Service.

14        24.    Defendant UNITED STATES FOREST SERVICE is the federal agency responsible

15    for the lawful management of National Forest System lands.

16        25.    Defendant ED SCHAFER is Secretary of the United States Department of

17    Agriculture, is responsible for that Department's activities, and is sued in his official capacity.

18        26.    Defendant GAIL KIMBALL, the Chief of the United States Forest Service, is

19    responsible for that agency's activities, and is sued in her official capacity.

20        27.    Defendant RANDY MOORE, Regional Forester of Pacific Southwest Region

21    (Region 5) of the United States Forest Service, is responsible for Forest Service activities in that

22    region and is sued in his official capacity.

23                          **FACTUAL ALLEGATIONS**

24                 **The Forest Planning And NEPA Review Process**

25        28.    The Forest Service approval of the Plans is documented in a Revised Land

26    Management Plan for each forest and analyzed in one combined Final Environmental Impact

27    Statement ("Final EIS") for all four forest plans. The Plans cover all national forest lands in

28    / / /

1   Southern California and are meant to guide management and uses of the Cleveland, Angeles, San

2   Bernardino and Los Padres National Forests over the next 10 to 15 years.

3       29.   The Forest Service began the planning process for each Southern California national

4   forest by publishing notice on September 23, 2001, in the Federal Register that it was preparing a

5   draft Environmental Impact Statement ("Draft EIS") for the Plans for each of the four forests.

6   Thereafter, the Forest Service held public meetings, released a Draft EIS on May 14, 2004, and

7   provided an opportunity for comment on the Draft EIS until August 14, 2004.  Individuals,

8   environmental organizations, and local and state agencies provided written comments to the

9   Forest Service regarding the Draft EIS' analysis of the proposed Plans for all four forests.  The

10  Attorney General's comments on the Draft EIS, *inter alia*, criticized the failure to adequately

11  discuss the impacts from oil and gas exploration on the California Condor and the mitigation for

12  those impacts, the failure to adequately address impacts from allowing areas (zones) of the forest

13  to be available for an increased number of off-road vehicle trails, the failure to discuss the

14  impacts of not adequately protecting roadless areas in the Forest through wilderness designations,

15  and the failure to consider a reasonable range of alternatives.  The Attorney General asked the

16  Forest Service to adopt Plans that would substantially increase the acreage in the forests to be

17  nominated for wilderness designation; over a million acres had been identified in the comments or

18  at public meetings as likely candidates for this status.

19      30.   As alleged more fully below, the Resources Agency also wrote to the Forest Service

20  and Department of Agriculture officials while the Plans were being formulated.  The Resources

21  Agency's comments addressed both state policy on roadless areas during the forest planning

22  process and the Southern California forest plans specifically.

23      31.   The Forest Service initially issued a Final EIS and approved the Plans on September

24  20, 2005, but then withdrew the Plan approvals because information had been omitted from the

25  public record.

26      32.   Ultimately, the Regional Forester reissued and approved the Plans on April 3, 2006

27  in four separate Records of Decision.  The Notice of Decision on the Plans was published on

28  / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   April 21, 2006 and notice of the availability of the Final Environmental Impact Statement was

2   published at 71 Fed.Reg. 20660 (April 21, 2006).

3            **The Resources Agency Informs the Forest Service of California's Statewide**
         **Policy Regarding Development in Roadless Areas and the Importance of**
4               **Addressing Those Protections During the Forest Planning Process**

5       33.   The Plans were formulated during a period in which the Resources Agency and

6   Forest Service had many written exchanges regarding California's policy on roadless areas.  As

7   alleged more specifically in the first claim for relief, the Forest Service had an explicit duty under

8   forest planning statutes and regulations to coordinate with these state policies and specifically

9   document that coordination when it analyzed the Plans, yet it ultimately and illegally ignored

10  these mandates.  These legal violations were particularly egregious due to the clarity and intensity

11  of the State of California's attempts to participate in the relevant forest planning efforts.

12      34.   In November, 2004, the Resources Agency wrote the United States Secretary of

13  Agriculture, noting that "the 4.4 million acres of [national forest] roadless areas in our state are

14  treasured by Californians for the many benefits they provide us in terms of recreational

15  opportunities, open space, wildlife habitats, and water quality benefits."  Exhibit A hereto. As the

16  Resources Agency pointed out, "environmental threats such as damaging wildfires, invasive

17  species, and poorly maintained roads do not stop at property boundaries." *Id.*  Thus, management

18  of these areas "demands a thorough and open planning process." *Id.*  The Resources Agency

19  specified that these important efforts should occur when the Forest Service formulated forest

20  plans for the various national forests in California. *Id.*

21      35.   During that time period, the Forest Service was attempting to formulate a longer-

22  term national policy on roadless areas and, in the interim, had promulgated a management policy

23  that, with limited exceptions, preserved the roadless characteristics of these areas.  Interim

24  Directive 1920-2004-1 [Forest Service Manual 1925.03].  On January 24, 2005, the Resources

25  Agency wrote to Regional Forester Jack Blackwell because the expiration date for that interim

26  policy was approaching.  Exhibit B hereto.  Secretary of Resources Mike Chrisman reiterated the

27  importance of the environmental values contained in California's roadless areas, urged that "truly

28  roadless areas [should] remain roadless" and requested that Forest Service promulgate a rule that

1  provided at least the same level of protection for roadless areas as the interim directive, with some

2  specific modifications.  *Id.*

3      36.   On January 27, 2005, the Regional Forester responded with written assurances to the

4  Secretary of Resources that the Forest Service would respect the protections of the Interim

5  Directive and the modifications the Resources Agency had requested.  Exhibit C hereto.

6  Specifically, the Regional Forester stated that:  (a) the Forest Service had not approved, and had

7  no plans to approve, any road construction in roadless areas in California pending completion of a

8  final roadless rule for the entire state; (b) maps of roadless areas would be updated and shared

9  with the State; and (c) the Forest Service would work with the State to decommission certain

10 types of existing roads in these areas.  Later, the Forest Service further extended the Interim

11 Directive protecting roadless areas.  Interim Directive 1920-2006-1 [Forest Service Manual

12 1925.03].

13     37.   Shortly after this exchange of letters, the Forest Service promulgated a new roadless

14 rule (36 C.F.R. Part 294, Subpart B) that specifically recognized the importance of individual

15 state input and policy in developing management policies for roadless areas in national forests.

16 **The Resources Agency Reiterates State Policies Protecting Roadless Areas and
   the Importance of Addressing Them During The Forest Planning Process**

17

18     38.   Secretary Chrisman again wrote to the Department of Agriculture and the Regional

19 Forester on July 6, 2005, to reiterate and clarify state policy on roadless areas and the importance

20 of addressing those protections during forest planning processes.  Exhibit D hereto.  He did so

21 because the Resources Agency was concerned that some Forest Service personnel had interpreted

22 the state's specific protections for roadless areas as only applying until, *inter alia,* a new plan was

23 adopted for a national forest.  *Id.*

24     39.   The Resources Agency explained that the state policies protecting roadless areas

25 (and the Forest Service's January 2005 commitment to abide by them) would remain in place

26 until a final federal rule was adopted that provided the same level of protection.  *Id.*  Secretary

27 Chrisman reiterated that, until then, these protections would not lapse upon adoption of a forest

28 plan.  *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

40.     Accordingly, the Resources Agency noted that forest plan revisions were underway in several national forests in California and requested that the Department of Agriculture and Regional Forester ensure that the State of California received adequate notice and a meaningful opportunity to participate in the planning process.  *Id.*  Secretary Chrisman stressed the state's particular interest in forest plan revisions that may address opportunities for road construction in roadless areas.  *Id.*

### The Resources Agency  Requests The Forest Service To Coordinate With State Planning for Roadless Areas in the Four Southern California Forests

41.     The Resources Agency also wrote the Forest Supervisor for each Southern California national forest on July 6, 2005, to specifically address the treatment of roadless areas during the development of the forest plan for each forest.  Exhibit E hereto.  The Forest Service had represented that the updated Plans did not provide for construction of any roads in identified roadless areas in the Southern California forests.  *Id.*  Because other planning efforts might impact these areas, the Resources Agency requested the Forest Service to consult with the state before making any determination to permit road construction in roadless areas, regardless of whether the Forest Service was undertaking a public comment process under the National Environmental Policy Act for those planning efforts or projects.  *Id.*

### The Resources Agency Protests Earlier Versions of the Plans That Unexpectedly Anticipated Road Construction In Roadless Areas

42.     Despite these written exchanges between the State of California and the Forest Service, a version of the Plans issued in September 2005 unexpectedly and abruptly contained provisions that anticipated approval of road construction in hundreds of thousands of acres of roadless areas in all four Southern California forests.

43.     Accordingly, on March 15, 2006, Secretary Chrisman wrote to the Regional Forester and requested that these plans be amended and reissued to address the state policies protecting roadless areas that the Resources Agency had repeatedly communicated to the Forest Service.  Exhibit F hereto.  Secretary Chrisman's letter highlighted the inconsistency between those state policies (as well as the Forest Service's January 2005 commitment to them) and the

1  provisions of the initially-released Plans that permitted approval of road construction in large

2  amounts of specifically-mapped "inventoried roadless areas."  Secretary Chrisman's letter also

3  commented that the Forest Service was undertaking efforts to designate routes in certain roadless

4  areas and that the Forest Service anticipated projects that could require roads in them.  *Id.*

5  Secretary Chrisman noted this information was not available to the public, thereby making it

6  difficult for the public and decision-makers to evaluate all aspects of the Plans and their

7  environmental impacts.  *Id.*

8  <u>**The Final Plans Ignore State Policies and Comments**</u>

9  　　44.　Though the Forest Service eventually reissued the Plans, it did so without

10  addressing the Resources Agency's objections or acknowledging them in the forest planning

11  process.

12  　　45.　Notwithstanding the  Resources Agency's many objections and requests to

13  coordinate planning with the Forest Service, the ultimately-approved Plans for the four Southern

14  California forests designate hundreds of thousands of acres within "inventoried roadless areas"

15  ("IRAs") as being suitable for road construction and reconstruction.  According to the Final EIS

16  for all four plans, 253,584 acres of IRAs are assigned to a "Back Country" land-use zoning

17  designation, 245,209 acres of IRAs to a "Back Country Motorized Use Restricted" designation,

18  and 38,511 acres of IRAs to a "Developed Area Interface" designation.  Each of these land use

19  designations allows, to some degree, approval of road construction.

20  　　46.　These zoning designations in IRAs in each Plan are inconsistent with both the

21  Regional Forester's earlier written commitments to the Resources Agency and the State's policy

22  on management of roadless areas.  The Plans graphically illustrate their inconsistency with state

23  policy through the adoption of a classification "1c" to identify the specific portions of IRAs

24  within the four national forest where "road construction or reconstruction" is allowed.  The

25  Regional Forester further confirmed in a letter to Secretary Chrisman that the present Plans did

26  not reflect state policy on roadless areas by suggesting that "[n]otwithstanding these zoning

27  designations," the Forest Service could take less-binding measures to address the state's

28  concerns.  Exhibit G hereto.  At that point, however, the Forest Service's proffered alternatives

1   were neither a practical nor legally-binding substitute for Plans that actually addressed the state's

2   concerns, as required by NFMA and its regulations.

3                                **FIRST CLAIM FOR RELIEF**

4
          (The Forest Service's Failure to Explicitly Review and Coordinate Its Forest Planning
5           with State Policy on Roadless Areas Violated the National Forest Management Act)

6          47.    Plaintiffs incorporate the allegations of the preceding paragraphs.

7          48.    The National Forest Management Act ("NFMA") controls the Forest Service's

8   management and planning for the national forests.   NFMA requires the Forest Service to

9   develop a land and resource management plan for every forest it manages and that the Forest

10  Service's development of forest management plans be "coordinated with the land and resource

11  management planning of State . . . governments . . ."  16 U.S.C. § 1604(a).  The Plans here were

12  developed pursuant to the NFMA and implementing regulations of Title 36 of the Code of

13  Federal Regulations, Part 219 that existed at the time.  The Forest Service initiated the planning

14  process for these four Plans under those existing regulations and elected to have them govern the

15  completion of the planning process. (Those regulations have subsequently been replaced with

16  other forest planning rules.)

17         49.    The applicable regulations specifically addressed the Forest Service's legal duty

18  to "coordinate regional and forest planning with the equivalent and related planning efforts of . . .

19  State . . . governments" when preparing the Plans.   36 C.F.R. § 219.7(b).  As alleged above, the

20  Forest Service has violated these duties under the NFMA and Part 219 by utterly disregarding

21  state policy on roadless areas, as well as its own assurances to the Resources Agency that it

22  would abide by those management policies throughout the state.

23         50.    Moreover, pursuant to Section 219.7(c), the Forest Service must document several

24  specific actions during its analysis of a forest plan to show that it has complied with this mandate

25  to coordinate with state policy.  Here, the Forest Service has addressed none of the required

26  items.  First, the Forest Service's analysis of forest management plans must display the

27  responsible officer's review of the planning and land use policies of state government, including

28  their "objectives . . . as expressed in their plans and policies. . . "  36 C.F.R. § 219.7(c)(1).  The

1    Plans and their public analysis contain no mention of the Resources Agency's roadless policies,

2    the state's objectives, or the Forest Service's written assurances to respect them.

3        51.    Second, the analysis of a forest plan must demonstrate "an assessment of the

4    interrelated impacts of these plans and policies," *Id.* § 219.7(c)(2).  Again, the Plans and their

5    analyses are silent on the interrelation (here, outright conflict) between state and federal policy.

6        52.    Finally, "where conflicts with Forest Service Planning are identified," the analysis

7    must also display "consideration of alternatives for their resolution." *Id.* § 219.7(c)(4).  Here,

8    the Forest Service's approval of the Plans did not even mention, let alone attempt to reconcile,

9    their conflict with state policy.  As alleged more specifically above, the Forest Service's approval

10   of the Plans simply ignored: (a) the Resources Agency's January, 2005, written policy that

11   generally precluded road construction in roadless areas, (b) the Forest Service's written response

12   assuring that defendant would honor those policies, extend the Interim Directive protecting these

13   areas, and not currently approve any projects involving roads, (c) the Resources Agency's

14   subsequent objection that the Plans violated these policies and commitments; and (d) the

15   admitted inconsistency of the Plans with those policies and commitments.

16       53.    The Forest Service thereby violated the National Forest Management Act and

17   denied the State of California's statutory right to have its policy on management of roadless areas

18   in national forests both considered and harmonized with federal forest planning.  The Forest

19   Service also violated its mandate to fully document that exercise for review by the decision-

20   maker and public.  Accordingly, the Forest Service's approval of the Plans should be set aside

21   until such time as the Forest Service complies with the NFMA.

22                        **SECOND CLAIM FOR RELIEF**

23
                    (The Final EIS's Failure to Provide Even General Information on
24                       Affected Roadless Areas Violated NEPA)

25       54.    Plaintiffs incorporate the allegations of the preceding paragraphs.

26       55.    The approval of the Plans violated NEPA, 42 U.S.C. §4321, *et seq.*  NEPA ensures

27   that "public officials make decisions that are based on understanding of environmental

28   consequences" and "that environmental information is available to public officials and citizens

1  before decisions are made and before actions are taken."  40 C.F.R. §1500.1(b), (c).  NEPA

2  requires federal agencies to prepare an environmental impact statement ("EIS") for "major

3  Federal actions" that may "significantly affect the quality of the human environment."  42 U.S.C.

4  §4332(c).  The Forest Service recognized that the Plans here are such actions, and prepared an

5  EIS.  An EIS must disclose, inter alia, the environmental impacts of the proposed action,

6  alternatives, and means to mitigate adverse environmental impacts.  42 U.S.C § 4332(2); 40

7  C.F.R. §§ 1508.11, 1502.16(h).  The analysis must ensure that adequate environmental

8  information is available to public officials and citizens before decisions are made and before

9  actions are taken.  The information must contain quality and accurate scientific analysis.  40

10  C.F.R. § 1500.1(b).  Public involvement and scrutiny are essential to implementing NEPA.  *Id.*

11      56.   In the context of management plans, the purpose of an EIS is "to evaluate the

12  possibilities in light of current ***and contemplated plans*** and to produce an informed estimate of

13  the environmental consequences . . ." *Kern v. BLM* , 284 F.3d 1062, 1072 (9th Cir.

14  2002)[emphasis in original].  If it is reasonably possible to analyze the impacts of a management

15  plan in an EIS, the agency must perform that analysis.  *Id.*  Here, the Forest Service was required

16  to analyze the environmental impacts of adopting Plans that will guide management of the

17  Southern California national forests in the foreseeable future, including the effects of assigning

18  hundreds of thousands of acres of currently roadless areas into land use zones that permit road

19  construction.

20      57.   The Ninth Circuit has specifically addressed the required NEPA analysis required

21  for a plan that establishes land use designations for roadless areas.  In *California v. Block,* 690

22  F.2d at 757-58, *supra*, the Forest Service inventoried and classified roadless areas for proposed

23  designation or study as protected wilderness.  Since these decisions would guide potential uses

24  for years until new forest plans were adopted, NEPA required this "decisive allocative decision

25  must . . . be carefully scrutinized now and not when specific development proposals are made."

26  *Id*., at p.763.  The Ninth Circuit held the EIS in *California v. Block* was inadequate because it did

27  not contain information on certain habitat areas, wildlife types and quantity, the presence of rare

28  and endangered species, or any unique characteristics of an area.  Instead, it only identified the

1    location and acreage of roadless areas, basic landform and ecosystem types, the number of

2    wilderness-associated species in the area, and a numerical rating of its wilderness attributes. *Id.*,

3    at p. 763.

4        58.    The Final EIS for the four Southern California forest plans does not even contain

5    the information held inadequate in *California v. Block*, let alone the additional analysis required

6    by that decision.   Despite the vast and unique range of different climates, terrain, habitats,

7    vegetation and wildlife that characterize the Southern California national forests, the Final EIS

8    for the Plans only discloses a single piece of information - the gross acreage of roadless areas in

9    all four forests in which road construction could be approved.  NEPA required this land

10   management decision to be informed by a much more detailed analysis of the affected areas.  The

11   Final EIS here did not even attempt to provide the Forest Service and public with the information

12   required under *California v. Block*, thereby depriving them of even a basic disclosure of the

13   general impacts of potentially permitting road construction in various types of roadless areas.

14   The Forest Service violated NEPA and its inadequately-informed approval of the Plans should be

15   set aside.

16                           **THIRD CLAIM FOR RELIEF**

17   (The Forest Service Violated NEPA By Not Adequately Analyzing Impacts from Increased

18               Access for Off-Highway Vehicles and Less Wilderness Protection)

19       59.    The Attorney General realleges and incorporates the allegations of the preceding

20   paragraphs and avers the following claim for relief.

21       60.    NEPA requires a discussion of impacts from an action and the means to mitigate

22   adverse environmental impacts of an action. 40 C.F.R. §1501.1(d);  40 C.F.R. § 1502.16(h).

23   Such analysis should be done at the earliest possible time to insure that planning and decisions

24   reflect environmental values, to avoid delays later in the process, and to head off potential

25   conflicts.  40 C.F.R. § 1501.2.

26       61.    The Final EIS for the revised Plans violates NEPA in that it fails to adequately

27   discuss the impacts of the Forest Service's decisions that will allow more off-highway vehicle

28   access over the life of the Plans.  The Forest Service has divided the forests into eight land use

1   zones.  Based on anticipated uses, motorized access will be permitted in five of these land use

2   zones.

3       62.   The Forest Service eventually plans to open the forests to more off-highway vehicle

4   use over the term of these Plans, and to make changes to the land use zoning in order to

5   accommodate demands for more off-highway vehicle trails.  The Forest Service has

6   acknowledged that the land use zones permitted by these Plans will not necessarily remain in

7   place and that as demand for zones that allow such detrimental uses increase, those lands

8   (including inventoried roadless areas) that are currently zoned to prevent road construction or

9   motorized use, may be opened to such uses.

10      63.   The Final EIS describes the many negative effects of vehicle use in the forests,

11  stating that it "adversely affects species at risk by trampling plants and their habitat, killing or

12  injuring small animals, harassing animals, initiating erosion features, accelerating erosion rates,

13  increasing soil compaction, crushing burrows, damaging soil, introducing invasive nonnative

14  plants and interrupting plant reproduction through the destruction of flowers and pollinator

15  habitat."  Yet the Forest Service suggests that discussion of the impacts of its decision to open

16  more land to off-highway vehicle uses or improve existing trails will be deferred until particular

17  routes are recommended in the future and until "design and compliance strategies" can be

18  developed at some later date. The Forest Service has acknowledged that it is anticipating building

19  new routes, and thus its analysis of the environmental impacts of those decisions should be

20  addressed in this Final EIS, not at some time in the future.  Despite the admitted adverse impacts

21  and inadequate enforcement of current restrictions, the preferred alternative would allow new

22  off-road trails and the improvement of other types of unclassified roads. The mitigation for these

23  impacts is not discussed in the Final EIS, but instead improperly deferred to later planning

24  processes.  The summary conclusions of the Final EIS on increasing motorized trails violates

25  NEPA's requirement of full public disclosure.

26      64.   The Forest Service also violated NEPA in that the selected alternative (4a) includes

27  a recommended wilderness designation for only a small proportion of the areas that were

28  discussed and recommended by the public.  Other than expressing its emphasis on the forests for

1    recreational use, the Final EIS does not adequately present the rationale for its limited

2    nomination.  NEPA requires the Final EIS to contain a reasonably thorough discussion of the

3    significant aspects of the probable consequences of an action.  The inadequate information about

4    the reasons for not choosing more wilderness acreage leaves the decision makers without the

5    basic tools they need to decide the fate of the forests and violates NEPA.  By simply stating that

6    certain areas will be recommended for wilderness designation and others will not be, the Forest

7    Service has not provided sufficiently detailed information for decision makers to have a clear

8    basis for choosing among alternatives.  It is necessary to "present the environmental impacts of

9    the proposal and the alternatives in comparative form, thus sharply defining the issues," so that a

10   reasoned decision can be made.  40 C.F.R. § 1502.14.  Having merely provided acreage

11   allocations for wilderness and non-wilderness designations, the Forest Service has failed

12   adequately to discuss the rationale for choosing an alternative with less wilderness, thereby

13   violating NEPA.  42 U.S.C. § 4332(2)(C)(iii).

14        65.    The Final EIS also fails to adequately analyze the impacts of its decision to

15   recommend so little wilderness.  Wilderness designation recommendations are some of the few

16   concrete actions that the Forest Service actually takes during its land management planning.  Yet,

17   in the "Environmental Consequences" section of Chapter 3 of the Final EIS, there is no separate

18   discussion of the environmental consequences of the rationale for the Forest Service's

19   recommendation of a bare fraction of the inventoried roadless areas that are potentially eligible

20   for wilderness designation.

21        66.    In the Final EIS, the Forest Service did undertake evaluations of inventoried

22   roadless areas for purposes of its wilderness recommendations, but these evaluations do not

23   evaluate the impact of opening up many of these areas to potential future uses that would detract

24   from their potential wilderness character.  The "analysis" of "Proposed Wilderness by

25   Alternative" in Appendix D, is simply a series of charts that list the numbers of acres

26   recommended under the various alternatives, and the various land use zones that those areas are

27   assigned under the various alternatives.   All of the land use zones under the Selected Alternative,

28   except for "Back Country Non-Motorized," "Existing Wilderness," and "Recommended

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Wilderness," will remain open to the potential that roads and other detrimental facilities or

2    construction could be implemented under these Plans.  There is no analysis of the impact that the

3    Forest Service's decision in selecting Alternative 4a, which leaves 547,443 out of 1,045, 281

4    acres of inventoried roadless areas in the four forests open to the possibility of future

5    development, will have on the forests.

6         67.    The Forest Service's failure to adequately discuss the adverse environmental

7    impacts from increased motorized use and road construction, as well as from its action to

8    recommend so little forest land for wilderness designation and its failure to provide sufficient

9    information to the public about its rationale for nominating so little forest land for wilderness

10   protection violates NEPA and constitutes arbitrary and capricious agency action, is an abuse of

11   discretion, and is contrary to law and to procedures required by law.  5 U.S.C. § 706(2)(A), (D).

12                          **FOURTH CLAIM FOR RELIEF**

13                  (The Forest Service Violated NEPA By Inadequately Analyzing
                 and Deferring the Discussion of Impacts and Mitigation Measures for
14               Impacts to the California Condor from Increased Oil and Gas Drilling**.**)

15        68.    The Attorney General realleges and incorporates the allegations of the preceding

16   paragraphs and avers the following claim for relief.

17        69.    NEPA requires a discussion of impacts from an action and the means to mitigate

18   adverse environmental impacts of an action and limits the degree to which an Final EIS can defer

19   analysis of impacts until a later Final EIS.   40 C.F.R. §1501.1(d);  40 C.F.R. § 1502.16(h).

20        70.     As to Los Padres National Forest, the Final EIS and the revised Plan incorporate

21   and adopt findings and analysis of the previously approved Oil and Gas Drilling Plan, to which

22   the Attorney General filed a separate administrative appeal on September 13, 2005.  That Plan

23   designated 4,277 acres of land as available for surface occupancy drilling activities and 47,798

24   acres of land as available for slant-drilling.  Such a commitment of specific lands to the

25   possibility of oil and gas development potentially forecloses wilderness and wildlife habitat uses,

26   which is not adequately analyzed in the Final EIS.

27        71.    The California Condor is one of the most endangered vertebrate species in the world

28   and has been the subject of one of the most extensive and ongoing species recovery efforts.  In

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1987, the condor ceased to exist in the wild.  The U.S. Fish and Wildlife Service tenaciously ran

a captive breeding program to save this species from extinction and condors have been re-

introduced at several locations within Los Padres.

72.    The Final EIS lacks an adequate discussion of the impacts of slant drilling on the

condor's viability.  The Plans would allow slant-drilling into forest lands if the drilling rig is

situated on non-forest lands more than 2,600 feet away.  Yet California Condors do not confine

themselves to artificial boundaries construed in leasing stipulations.  The conclusion that condor

viability will be unaffected by drilling on private land within a one-half mile of critical habitat

areas is based on an incomplete and flawed analysis.

73.    The New Preferred Alternative in the Los Padres Plan will allow surface

disturbances near critical habitat areas for the condor, with approximately 400 acres of critical

condor habitat being designated as land available for oil and gas leasing.  Even though the

environmental harm to the California Condor and its habitat caused by infrastructure for oil and

gas exploration and drilling, such as roads, pipelines, wellheads, pads and tanks is reasonably

foreseeable, the Final EIS contains an inadequate discussion of mitigation measures and

inappropriately defers a discussion of mitigating measures.

74.    The Forest Service defers further discussion of the mitigation of environmental

harm to condors to future site-specific surveys and consultations with the U.S. Fish and Wildlife

Service.  Given the foreseeable threat to the condor's viability, the deferral of analysis to future

consultation is inadequate under NEPA.  The Final EIS' discussion of mitigation of

environmental impacts to the California Condor, is limited to future Bureau of Land

Management Standard Lease Terms, special lease stipulations, and the use of Threatened and

Endangered Species  Information Notices.  These notices are inadequate mitigation as they rely

on private industry's compliance with certain terms.  It is unreasonable to expect a construction

site to be immaculately clean, as is suggested in the Final EIS.  This lack of discussion of

meaningful mitigation for impacts from future oil exploration violates NEPA.

75.    The Forest Service's inadequate discussion of mitigation of impacts to the

California Condor and its deferral of discussing possible mitigation until later planning

1   processes, as required by NEPA, constitutes arbitrary and capricious agency action, is an abuse of

2   discretion, and is contrary to law and to procedures required by law.  5 U.S.C. § 706(2)(A), (D).

3                                   **FIFTH CLAIM FOR RELIEF**

4    (The Forest Service Violated NEPA By Failing to Analyze a Reasonable Range of Alternatives.)

5           76.     The Attorney General realleges and incorporates the allegations of the preceding

6   paragraphs and avers the following claim for relief.

7           77.     NEPA requires agencies, to the fullest extent possible, to study, develop, and

8   describe appropriate alternatives to recommend courses of action in any proposal which involves

9   unresolved conflicts concerning alternative uses of available resources.  42 U.S.C. § 4332(2)(E).

10  NEPA requires that this analysis identify and assess reasonable alternatives to proposed actions in

11  order to avoid or minimize adverse impacts on the environment.  40 C.F.R. § 1500.2(e).

12          78.     The Forest Service violated NEPA by selecting the Alternative 4a without

13  providing a reasonable range of alternatives.  In the Draft EIS it included two alternatives that

14  contained provisions that ensured they would have no likelihood of serious consideration by the

15  Forest Service.  Alternatives 5 and 6 were essentially extremes that were assured of never being

16  implemented.  Alternative 5 incorporated such an extreme increase in the availability of

17  motorized access, that it would be safe to assume that the Forest Service could never implement

18  the plan and maintain its obligations to maintain or restore ecological sustainability of the

19  national forest required by the planning guidelines contained at 36 C.F.R. section 219.1(b).

20  Alternative 6, on the other hand, purported to incorporate the wishes of those who would like to

21  see increased protection and conservation of resources.  The Forest Service created Alternative 6,

22  and then loaded it up with unnecessary attributes, saddling it with aspects that made it an

23  unacceptable alternative from a fire-fighting point of view, thereby ensuring it would not be

24  seriously considered.  Instead, the Forest Service could have just as easily drafted the alternative

25  to allow roads necessary for fire protection.  Its failure to do so violates the NEPA requirement

26  that an EIS consider a full range of reasonable alternatives.  While an agency is not required to

27  analyze alternatives that do not meet its proposed goal, an agency cannot narrowly define its

28  purpose in order to exclude reasonable alternatives.  This failure to provide a reasonable range of

1    alternatives violates NEPA.

2        79.    Forest Service's failure to provide a reasonable range of alternatives for the

3    proposed action as required by NEPA, constitutes arbitrary and capricious agency action, is an

4    abuse of discretion, and is contrary to law and to procedures required by law.  5 U.S.C. §

5    706(2)(A), (D).

6                              **RELIEF REQUESTED**

7        WHEREFORE, plaintiffs Resources Agency and the Attorney General request that this

8    Court:

9        1.    Issue a declaratory judgment that defendants arbitrarily and capriciously approved

10   the Plans for the Angeles, Cleveland, San Bernardino, and Los Padres National Forests in

11   violation of the NFMA and NEPA, without a reasoned and supported analysis for this action.

12       2.    Issue a declaratory judgment that defendants violated NFMA by: (a)  failing to

13   coordinate with state policy regarding management of roadless areas and document that review in

14   the EIS, including the ultimate decision not to follow that state policy, and (b) that defendants

15   violated NEPA by not adequately analyzing the impacts of assigning land use classifications to

16   current roadless areas that permit approval of road construction, by failing to adequately assess

17   the adverse environmental impacts of the Plans, by failing to consider an adequate range of

18   alternatives to the Plans, and by failing to adequately consider measures mitigating the adverse

19   environmental impacts of the revised Plans, especially as to the California Condor.

20       3.    Issue a mandatory injunction enjoining defendants to set aside the Records of

21   Decision to implement the Plans and the supporting Final Environmental Impact Statement and

22   that any reapproval of the Plans or their environmental analysis comply with the NFMA and

23   NEPA;

24       4.    Award the Resources Agency and People costs, expenses, and reasonable attorney

25   fees in accordance with law.

26       5.    Award such other relief as this Court deems just and proper.

27   / / /

28   / / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Dated:                                    Respectfully submitted,

2                                             EDMUND G. BROWN JR.,
                                                Attorney General
3
                                              THEODORA BERGER
4                                             Senior Assistant Attorney General

5                                             _____
                                              BRIAN HEMBACHER
6                                             Deputy Attorney General

7                                             Attorneys for PEOPLE OF THE STATE OF
                                              CALIFORNIA, ex rel. EDMUND G.
8                                             BROWN JR., ATTORNEY GENERAL

9                                             J. MATTHEW RODRIQUEZ
                                              Senior Assistant Attorney General
10
                                              _____
11                                            PETER SOUTHWORTH
                                              Attorneys for CALIFORNIA RESOURCES
12                                            AGENCY and DEPARTMENT OF
                                              FORESTRY AND FIRE PROTECTION
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT - A



STATE OF CALIFORNIA

ARNOLD SCHWARZENEGGER, Governor
MIKE CHRISMAN, Secretary

November 15, 2004

The Honorable Ann Veneman
Agriculture Secretary
United States Department of Agriculture
1400 Independence Ave., SW
Washington, DC 20250

Dear Secretary Veneman:

The State of California appreciates the opportunity provided by the U.S. Department of Agriculture (USDA) Forest Service to review the existing management requirements for inventoried roadless areas within the state's 18 National Forests and if warranted, to petition the Department to establish or adjust management requirements. Existing and future management of all National Forest System (NFS) lands—regardless of management designation—is very important to states. Consistent with Governor Schwarzenegger's belief that states must play a stronger role with federal land management agencies to achieve coordinated and comprehensive resource stewardship that can be thoughtfully implemented, we commend the Bush administration for understanding the value that closer partnerships with states can offer for the future of our National Forests.

As promulgated by 36 CFR Part 294, 'Special Areas; State Petitions for Inventoried Roadless Area Management', there is a long and complex history to the planning for inventoried roadless areas within the National Forests. After a careful review of the proposed regulations, we believe that the most prudent method to address the future management of roadless areas in the State of California is by working closely with the individual National Forest representatives as they revise the land management plans in future years.

The 4.4 million acres of NFS roadless area in our state are treasured by Californians for the many benefits they provide us in terms of recreational opportunities, open space, wildlife habitats and water quality. They are also a part of our landscape under many different ownership regimes where environmental threats such as damaging wildfires, invasive species, and poorly maintained roads do not stop at property boundaries.


Baldwin Hills Conservancy · California Bay-Delta Authority · California Coastal Commission · California Conservation Corps · California Tahoe Conservancy
Coachella Valley Mountains Conservancy · Colorado River Board of California · Delta Protection Commission · Department of Boating & Waterways · Department of Conservation
Department of Fish & Game · Department of Forestry & Fire Protection · Department of Parks & Recreation · Department of Water Resources
Energy Resources, Conservation & Development Commission · Native American Heritage Commission · San Diego River Conservancy
San Francisco Bay Conservation & Development Commission · San Gabriel & Lower Los Angeles Rivers & Mountains Conservancy · San Joaquin River Conservancy
Santa Monica Mountains Conservancy · State Coastal Commission · State Lands Commission · Wildlife Conservation Board

Secretary Veneman
November 15, 2004
Page 2

The extent and diversity of the USDA Forest Service roadless areas in California demands a thorough and open planning process to address the benefits and costs of different management strategies. We believe this process can most effectively be done by each of the National Forests addressing the full suite of issues surrounding roadless areas as they revise their land management plans.

The State of California will actively participate in these Forest-specific processes to ensure that the interests of our citizens are addressed. We also feel the National Forest-specific planning exercises will be the most effective way to reach the unique needs of local stakeholders.

As we approach working with individual National Forest plan revisions we would like to emphasize four points for your consideration:

1) The 'inventoried roadless area' maps are out of date or inaccurate in some areas; hence the maps need to be updated and field verified by the USFS as part of the review process.
2) There will be a need to grandfather in 'unofficial roads' into roadless areas such as those noted by Native American tribes in the eastern Sierra Nevada that are used by tribal elders to reach sacred sites.
3) To the extent practical, roads that are not maintained should be decommissioned.
4) Limitations associated with roadless status should not unreasonably detract from the ability of the USFS or its cooperators to effectively to deal with wildland fire protection; current policies reflect this position and so should any future policy changes.

While not taking advantage of this petition process, the State of California will continue to take an active and keen interest in the future management of NFS lands for all the recreation, water quality, biodiversity, forest health, timber and fire protection benefits that the public deserves. Thank you again extending the courtesy to states to play a greater role determining the future of inventoried roadless areas.

Sincerely,

MIKE CHRISMAN
Secretary for Resources

# EXHIBIT - B

S T A T E   O F   C A L I F O R N I A



ARNOLD SCHWARZENEGGER, Governor
MIKE CHRISMAN, Secretary



January 24, 2005

Mr. Jack Blackwell
Regional U.S. Forester
1323 Club Drive
Vallejo, CA  94592

Dear Regional Forester Blackwell,

The State of California has a keen interest in the management of all National Forest System lands—regardless of designation—under the stewardship of Region Five of the USDA Forest Service (USFS.)

We note that the USFS Interim Directive 1920-2004-1, that provides guidance for addressing road and forest management activities in inventoried roadless areas, is set to expire January 2006.  With the changes listed below, we believe this Interim Directive provides an appropriate level of protection for our inventoried roadless areas (IRAs).  The purpose of this letter is to request that the USFS promulgate a rule that provides <u>at least</u> the same level of protection as the Interim Directive with the changes listed below for existing IRAs in California before the Interim Directive expires.

**The Region 5 Roadless Areas should be governed by the following principles:**

- The USFS Chief should have no greater discretion than the Regional Forester or Forest Supervisor in approving or disapproving road construction or reconstruction in inventoried roadless areas.
- Maps of IRAs need to be updated and shared with the State to confirm that the maps accurately reflect current conditions.
- Where roads exist in IRAs, we must conduct thoughtful, common sense-based reviews of whether these roads should be actively managed or decommissioned.  For example, roads that provide access for Native American Tribes to widely acknowledged sacred sites or meet legitimate public safety objectives or well-managed recreational use should be actively managed. Roads that cannot be managed to mitigate sedimentation in sensitive watersheds should be decommissioned.
- Roadless status limitations should not compromise our fire fighting efforts consistent with existing authority.

We believe that California's interests are best served when <u>truly roadless areas remain roadless</u>. However, unlike wilderness areas, a multitude of activities like those mentioned above are allowed in roadless areas so long as new roads are not created for such activities.

The State of California looks forward to working with you to address this important issue.

Sincerely,

*Mike Chrisman*

MIKE CHRISMAN
Secretary for Resources

Baldwin Hills Conservancy • California Bay Delta Authority • California Coastal Commission • California Conservation Corps • California Tahoe Conservancy
Coachella Valley Mountains Conservancy • Colorado River Board of California • Delta Protection Commission • Department of Boating & Waterways • Department of Conservation
Department of Fish & Game • Department of Forestry & Fire Protection • Department of Parks & Recreation • Department of Water Resources
Energy Resources, Conservation & Development Commission • Native American Heritage Commission • San Diego River Conservancy
San Francisco Bay Conservation & Development Commission • San Gabriel & Lower Los Angeles Rivers & Mountains Conservancy • San Joaquin River Conservancy
Santa Monica Mountains Conservancy • State Coastal Commission • State Lands Commission • Wildlife Conservation Board

# EXHIBIT - C



| United States | Forest | Pacific | Regional Office, R5 |
| Department of | Service | Southwest | 1323 Club Drive |
| Agriculture | | Region | Vallejo, CA 94592 |
| | | | (707) 562-8737 Voice |
| | | | (707) 562-9130 Text (TDD) |

File Code: 1900
Date: JAN 2 7 2005

Mr. Michael Chrisman
Secretary
CA Resources Agency
1416 Ninth Street – Suite 1311
Sacramento, CA 95814

Dear Secretary Chrisman:

Thank you for your letter of January 21, 2005, concerning the management of Inventoried
Roadless Areas in the national forests in California. I share your view that California's interests
are best served when truly roadless areas remain roadless consistent with the need to avoid
compromising our fire-fighting efforts.

You are correct that Forest Service Interim Directive 1920-2004-1 will expire in January 2006.
It is our expectation that the Forest Service will complete a new roadless rule prior to that date.
Future roadless protection will be determined by the forthcoming rule.

With respect to the four changes you request for interim roadless protection, we can agree with
each.

The Interim Directive does grant the Chief of the Forest Service broader discretion than Regional
Foresters to approve road construction in Inventoried Roadless Areas. To date, the Chief has not
approved any road construction in roadless areas in California under the terms of the Interim
Directive. There are no plans to do so. By this letter, you can assume that will remain the
Agency's policy for California pending the completion of a final roadless rule.

We will provide you updated maps of the Inventoried Roadless Areas as they are completed. We
concur with the need to provide appropriate access for: 1) Native American sacred sites; 2)
legitimate public safety objectives; 3) well-managed recreational use; and 4) fire-fighting efforts.
We look forward to continuing to work with the state in decommissioning Forest Service roads
that are negatively affecting sensitive watersheds.



Caring for the Land and Serving People

Secretary Michael Chrisman                                                          2

Finally, as we complete work on a final roadless rule, we look forward to developing a regulation that fully protects roadless values at least as successfully as the Interim Directive and in a fashion that meets the State's goals for the protection of wild areas in California.

Sincerely,

JACK A. BLACKWELL
Regional Forester

# EXHIBIT - D

*cc: Sandra Ikuta*



STATE  OF  CALIFORNIA

A  G  E  N  C  Y

ARNOLD SCHWARZENEGGER, *Governor*
MIKE CHRISMAN, Secretary

July 6, 2005

Mr. Mark E. Rey
Undersecretary for Natural Resources and Environment
United States Department of Agriculture
1400 Independence Ave SW
Washington, D.C. 20250

Re:  Roadless Protection in California

Dear Undersecretary Rey,

As senior personnel changes are underway at U.S. Department of Agriculture
(USDA) Forest Service Region Five, this letter is to confirm that the U.S. Forest
Service (USFS) will honor its commitment to the State expressed in
correspondence from former Regional Forester Jack Blackwell dated January 27,
2005.  To avoid the possibility of any confusion among new Region Five USFS
personnel, I think it is important to preserve the continuity of our understanding.

In an exchange of letters between Mr. Blackwell and myself last January (see
attached letters dated January 24, 2005 and January 27, 2005), the U.S.
Department of Agriculture (USDA) committed to a level of protection for truly
roadless areas in California.  In particular, my letter of January 24, 2005
requested that the USFS promulgate a *rule* that provided *at least* the same level
of protection as the Interim Directive 1920-2004-1, with the following
modifications:

1. The USFS Chief should have no greater discretion than the Regional
   Forester or Forest Supervisor in approving or disapproving road
   construction or deconstruction in inventoried roadless areas.
2. Maps of IRAs need to be updated and shared with the State to confirm
   that the maps accurately reflect current conditions.
3. Where roads exist in IRAs, we must conduct thoughtful, common
   sense-based reviews of whether those roads should be actively
   managed or decommissioned.  For example, roads that provide access
   for Native American Tribes to widely acknowledged sacred sites or
   meet legitimate public safety objectives or well-managed recreational
   use should be actively managed.  Roads that cannot be managed to
   mitigate sedimentation in sensitive watersheds should be
   decommissioned.
4. Roadless status limitations should not compromise our fire fighting
   efforts consistent with existing authority.

*1416 Ninth Street, Suite 1311, Sacramento, CA  95814     Ph. 916.653.5656     Fax  916.653.8102     http://resources.ca.gov*

*Baldwin Hills Conservancy · California Bay-Delta Authority · California Coastal Commission · California Coastal Conservancy · California Conservation Corps*
*California Tahoe Conservancy · Coachella Valley Mountains Conservancy · Colorado River Board of California · Delta Protection Commission · Department of Boating & Waterways*
*Department of Conservation · Department of Fish & Game · Department of Forestry & Fire Protection · Department of Parks & Recreation*

Mr. Mark E. Rey
July 6, 2005
Page 2

In his response to my letter, on January 27, 2005, Regional Forester Jack Blackwell gave assurances to the state that USFS would respect the protections of the Interim Directive and the four principles articulated above so that truly roadless areas would remain roadless. In his conclusion, Mr. Blackwell committed to "developing a roadless rule that fully protects roadless values at least as successfully as the Interim Directive and in a fashion that meets the state's goals for the protection of wild areas in California."

There can be no question that the rule we asked for in our letter, and the rule Mr. Blackwell promised in his letter, was a new rule that would establish a level of protection for inventoried roadless areas in California. The plain language of the letters and the understanding of the parties involved make clear that the promised new rule was *not* the same as the pending federal rule establishing a petition process whereby states could petition the USFS to develop a rule for inventoried roadless areas. The petition process rule itself does not provide the protections discussed in the letters. In fact, at the time of the exchange of letters with Mr. Blackwell, California had already declined the USFS's offer to participate in that petition process.

I understand that some USFS staff members may have interpreted the letters as extending the protections of the modified Interim Directive only until such time as a forest management plan revision is completed, or until the petition process rule becomes final. This interpretation is incorrect. As noted above, Mr. Blackwell's commitment to a level of protection for roadless areas "pending the completion of a final roadless rule" means that the agreed-upon level of protection will remain in place until replaced by a rule protecting inventoried roadless areas, not until the petition process rule becomes final. Moreover, Mr. Blackwell's letter makes no reference to the protections of the Interim Directive lapsing when the forest management plan revisions are completed. A review of the language in the letters makes it clear that USFS's commitments do not lapse until a rule protecting roadless values is in place.

I ask that the USDA reaffirm that the commitment made by Mr. Blackwell on its behalf remain the policy of the USFS. Specifically, UDSA should reaffirm that the USFS will not relax the level of protection given to truly roadless areas from that provided in the Interim Directive (as modified by our letters) in the management of National Forests in California. Furthermore, USDA should reaffirm that the USFS will work with the state to develop a protective roadless rule.

In addition, as the forest plan revision process is underway or scheduled for several national forests in California, I ask you to ensure that the state receive timely written notice and a meaningful opportunity to participate in that revision

Mr. Mark E. Rey
July 6, 2005
Page 3

process. The state has a particular interest when the revision process might include opportunities for the construction of new roads.

I also ask that the state receive such notice and an opportunity to participate before the USFS approves any project that might include such road construction.

As we have stated before, we believe that California's interests are best served when truly roadless areas remain roadless. The State of California looks forward to working with you to address this important issue.

Sincerely,

Mike Chrisman
Secretary for Resources

Cc:

Bernie Weingardt
Regional Forester
USDA Forest Service, Region Five
1323 Club Drive
Vallejo, CA 94592

# EXHIBIT - E

S T A T E   O F   C A L I F O R N I A



A G E N C Y

ARNOLD SCHWARZENEGGER, Governor
MIKE CHRISMAN, Secretary

July 6, 2005

Jody Noiron, Forest Supervisor
Angeles National Forest
Supervisor's Office
701 N. Santa Anita Avenue
Arcadia, CA 91006

Gloria Brown, Forest Supervisor
Los Padres National Forest
Supervisor's Office
6755 Hollister Avenue, Suite 150
Goleta, CA 93117

Tina Terrell, Forest Supervisor
Cleveland National Forest
10845 Rancho Bernardo Rd, Suite 200
San Diego, CA 92127

Gene Zimmerman
San Bernardino National Forest
1824 Commercenter Circle
San Bernadino, CA 92408-3430

Re:  Updated Forest Management Plans

Dear Forest Supervisors,

I am writing to confirm my understanding regarding the four updated Forest Management
Plans for the Los Padres, Angeles, Cleveland and San Bernardino National Forests.

Department of Forestry and Fire Protection staff at the Resources Agency has discussed
the four updated forest management plans with Ron Pugh, Forest Plan Revision team
leader.  Based on this discussion, I understand that the USDA Forest Service (USFS) has
updated previous Inventoried Roadless Areas (IRA's) to reflect accurate road conditions
on these four national forests and has identified 552 miles of roads within these IRAs.  In
addition, the USFS has identified 107 truly roadless areas in the IRAs and is
recommending some 13 of these areas for wilderness status.

Mr. Pugh has also informed us that the updated Forest Management Plans do not
currently contain any plans for construction of new roads within these IRA's.  However, in
the near future, the USFS intends to develop a plan for undertaking a mixture of road
closures, road upgrades, and possibly new official roads in IRA's, with a long term goal of
reducing overall environmental impacts from use of both official USFS roads and unofficial
roads within these IRA's.

I understand that the USFS's future plan for addressing roads within IRA's, as well as
subsequent specific road projects, will be reviewed pursuant to the NEPA process,
including opportunities for public comment.  However, regardless whether the USFS
solicits public comment on the future plan for addressing IRA's or on any specific road

Baldwin Hills Conservancy · California Bay-Delta Authority · California Coastal Commission · California Coastal Conservancy · California Conservation Corps
California Tahoe Conservancy · Coachella Valley Mountains Conservancy · Colorado River Board of California · Delta Protection Commission · Department of Boating & Waterways
Department of Conservation · Department of Fish & Game · Department of Forestry & Fire Protection · Department of Parks & Recreation

Forest Supervisors
July 6, 2005
Page two


project, it is vital that the State have a meaningful opportunity to participate in any decision which might result in the construction of new roads in defined IRA's. Therefore, I request and strongly urge that the USFS provide me with written notice and an opportunity to comment well before any decision is made on such issues.

Please do not hesitate to contact me or Bill Stewart, Assistant Deputy Director (FRAP) at the Department of Forestry and Fire Protection, (916) 653-1586, if you have any questions regarding this letter.

Sincerely,

Mike Chrisman
Secretary for Resources


cc:    Mark Rey, Undersecretary for Natural Resources and Environment
       U.S. Department of Agriculture
       1400 Independence Avenue, S.W.
       Washington, DC 20250

       David Tenny, Deputy Undersecretary for Forestry
       U.S. Department of Agriculture
       1400 Independence Avenue, S.W.
       Washington, DC 20250

       Bernie Weingardt
       Regional Forester
       USDA Forest Service, Region Five
       1323 Club Drive
       Vallejo, CA  94592

       Ron Pugh
       USDA Forest Service
       PO Box 96090
       Washington, DC 20090-6090

# EXHIBIT - F



S T A T E   O F   C A L I F O R N I A

A G E N C Y

March 15, 2006

ARNOLD SCHWARZENEGGER, Governor
MIKE CHRISMAN, Secretary

Bernard Weingardt, Regional Forester
Pacific Southwest Region
UNITED STATES FOREST SERVICE
1323 Club Drive
Vallejo, CA 94592

Re:    **Southern California Forest Plans**

Dear Regional Forester Weingardt:

Thank you for your recent decision to withdraw Land Management Plans for the Angeles, Cleveland, Los Padres and San Bernardino national forests in Southern California. Regardless of the issues in question, we appreciate the difficulty of making such a decision and believe that the public will benefit as a result.

We understand that your staff is addressing technical issues so that the four land use management plans can be published in the near future. Prior to your re-issuing the Records of Decision on the Southern California Forests Plans, the Resources Agency requests that you address our concerns regarding certain land designations in the four plans.

As you will recall, on January 24, 2005, I wrote to Regional Forester Jack Blackwell regarding the protection of all National Forest System lands in California (copy attached). This letter requested that the USDA Forest Service (USFS) promulgate a rule that provided at least the same level of protection as the Interim Directive 1920-2004-1, with four specified modifications, including that roadless status limitations should not compromise our fire fighting efforts consistent with existing authority.

In response to my letter, on January 27, 2005, the Regional Forester provided assurances to the state that USFS would respect the protections of the Interim Directive and the four modifications we had specified so that truly roadless areas would remain roadless (copy attached). In light of the Regional Forester's commitment to keep truly roadless areas roadless, we were concerned that the Land Management Plans for the four Southern California forests appeared to designate hundreds of thousands of Inventoried Roadless Areas as being suitable for road construction.

Specifically, the Land Management Plans allocate 253,584 acres of Inventoried Roadless Areas to a "Back Country" land-use zoning designation, 245,209 acres of Inventoried Roadless Areas to a "Back Country Motorized Use Restricted" designation and 38,511 acres of Inventoried Roadless Areas to a "Developed Area Interface" designation. (See Final EIS, Vol. I, Table 548, ch. 2, p. 66.) The "Back Country" and "Developed Area Interface" designations allow any and all "road construction or re-construction" while the "Back Country Motorized Use Restricted" designation allows for "road construction or re-construction" for authorized uses.

Mr. Weingardt
March 13, 2006
Page 2 of 3

*(See Land Management Plan Part 2, Angeles National Forest Strategy Table 2.1.3; Land Management Plan Part 2, Cleveland National Forest Strategy, Table 2.2.3; Land Management Plan Part 2, Los Padres National Forest Strategy Table 2.3.3; and, Land Management Plan Part 2, San Bernardino National Forest Strategy Table 2.4.3.)*

USFS planning staff has informed us that both official and unofficial national forest system routes may be present in these Inventoried Roadless Areas designated "Back Country," "Back Country Motorized Use Restricted," and "Developed Area Interface." We understand that individual national forests are undertaking a route designation process designed to identify the locations of all routes—official and unofficial--on national forest system lands. The USFS is waiting to complete this route designation process until the four Southern California Land Management Plans have been finalized. USFS staff has also informed us that they are considering various projects in the Inventoried Roadless Areas that may require roads, although these projects are not discussed in the land management plans. At the time the public and the decisionmaker were considering the proposed Land Management Plans, they did not have updated route designation information identifying the location of official and unofficial roads in the Inventoried Roadless Areas. Moreover, in considering its land designations in IRAs, the USFS was aware that possible future projects would require roads in the IRAs. This information, which may have affected the USFS's decisions on land designations, was not available to the public. The absence of this data made it difficult for the public and the decisionmaker to evaluate all aspects of the proposed Land Management Plans and their potential environmental impacts.

In light of the information currently available, we are concerned that the four Southern California Land Management Plans do not protect Inventoried Roadless Areas as required by the commitments in your January 27, 2005 letter. Any such failure to protect the Inventoried Roadless Areas would be contrary to federal policy to conserve roadless areas and to provide appropriate deference to state concerns with respect to roadless areas. See Final Rule re State Petitions for Inventoried Roadless Area Management, 70 Fed. Reg. 25653 (May 13, 2005).

Accordingly, we request that the USDA Forest Service take immediate steps to ensure that all Inventoried Roadless Areas are protected in the manner set forth in your January 27, 2005 letter.

Thank you for your immediate attention and consideration of this letter.

Sincerely,

Mike Chrisman, Secretary
CALIFORNIA RESOURCES AGENCY

cc:     Judy Noiron, Forest Supervisor
        Angeles National Forest
        701 N. Santa Anita Avenue
        Arcadia, CA 91006

Mr. Weingardt
March 13, 2006
Page 3 of 3


Tina Terrell, Forest Supervisor
Cleveland National Forest
10845 Rancho Bernardo Rd., Suite 200
San Diego, CA 92127

Gloria Brown, Forest Supervisor
Los Padres National Forest
6755 Hollister Avenue, Suite 150
Goleta, CA 93117

Forest Supervisor
San Bernardino National Forest
1824 S. Commercenter Circle
San Bernardino, CA 92408

Southern California Forest Plan Revisions
USDA FOREST SERVICE CONTENT ANALYSIS CENTER
P.O. Box 22777
Salt Lake City, UT 84122

# EXHIBIT - G



| United States<br>Department of<br>Agriculture | Forest<br>Service | Pacific<br>Southwest<br>Region | Regional Office, R5<br>1323 Club Drive<br>Vallejo, CA 94592<br>(707) 562-8737 Voice<br>(707) 562-9130 Text (TDD) |
|---|---|---|---|

File Code: 1900

Date: APR - 4 2006

Secretary Mike Chrisman
California Resources Agency
1416 Ninth Street, Suite 1311
Sacramento, CA 95814

Dear Secretary Chrisman:

We appreciate your letter of March 15, 2006 expressing your concerns regarding certain land designations in the Land Management Plans for the Angeles, Cleveland, Los Padres and San Bernardino National Forests in Southern California. These Land Management Plans set forth a zoning designation developed through an extensive public process to meet the current and projected future needs of stakeholders. Notwithstanding these zoning designations, however, I want to reaffirm the commitment we made to protect Inventoried Roadless Areas (IRAs) throughout the Pacific Southwest Region.

In a letter to you from former Regional Forester Jack Blackwell, dated January 27, 2005, we gave assurances to California that the Forest Service would follow the guidance from the Interim Directive 1920-2004-1, until a final roadless rule was completed for California. Interim Directive 1920-2004-1 has now been extended to July 16, 2007, per Interim Directive 1920-2006-1. By way of background, the Interim Directive provides that IRAs shall generally be managed to preserve their roadless characteristics. Among other things, it allows for the road construction or reconstruction projects described in Section 1925.04b.1 of the Interim Directive (decisions delegated to the Regional Forester), but does not allow other types of road construction or reconstruction in IRAs, unless approved by the Chief. The requirement that the Chief must approve any road construction or reconstruction project not described in Section 1925.04b.1 of the Interim Directive terminates when a forest-scale roads analysis is completed and incorporated into each forest plan. Such an analysis has been completed for most of the 18 national forests in California, and therefore that portion of the Interim Directive no longer applies to those forests. Nevertheless, in light of our agreement with California, we still intend to follow the guidance in the Interim Directive 1920-2004-1, as further amended by the four changes in your letter, until a final roadless rule for California has been completed.

Our January 27th letter also expressed our support for the four changes you proposed for the protection of truly roadless areas in your letter of January 24, 2005. Your changes are listed below and we remain in support of each.

1. The USFS Chief should have no greater discretion than the Regional Forester or Forest Supervisor in approving or disapproving road construction or reconstruction in inventoried roadless areas.



**Caring for the Land and Serving People**

Printed on Recycled Paper

2. Maps of IRAs need to be updated and shared with the State to confirm that the maps accurately reflect current conditions.

3. Where roads exist in IRAs, we must conduct thoughtful, common sense-based reviews of whether those roads should be actively managed or decommissioned. For example, roads that provide access for Native American Tribes to widely acknowledged sacred sites or meet legitimate public safety objectives or well-managed recreational use should be actively managed. Roads that cannot be managed to mitigate sedimentation in sensitive watersheds should be decommissioned.

4. Roadless status limitations should not compromise our fire fighting efforts consistent with existing authority.

At the conclusion of this letter, we also committed to "developing a roadless rule that fully protects roadless values at least as successfully as the Interim Directive and in a fashion that meets the State's goals for the protection of wild areas in California." We believe that the final rule (adopted May 13, 2005) provides for a state petition process that will, when complete, fulfill this commitment.

Let me assure you that we intend to honor these commitments. We intend to work closely with California throughout the petition process for roadless area management in California until a final rule has been promulgated. And during the interim period, until the petition process is complete and a final rule promulgated, we intend to work with you on roadless area management in national forests in California as follows:

1. We will continue to respect the prohibition on road construction and re-construction set forth in the Interim Directive, as modified by the four changes in your letter, on all national forests in the Region, including those in southern California. Specifically, the Regional Forester: (i) will not authorize road construction or reconstruction projects in IRAs except for the road construction or reconstruction projects described in Section 1925.04b.1 of the Interim Directive (decisions delegated to the Regional Forester), as modified by the four changes in your letter; and (ii) will not recommend to the Chief a decision for any road construction or reconstruction project in an inventoried roadless area within the Chief's decision authority, which is described in Section 1925.04a, para.1. By taking these steps, the Regional Forester can ensure that the USFS will not undertake any road construction or re-construction projects in IRAs in national forests in the Region, except as set forth in the Interim Directive, as modified by the four changes in your letter.

2. Prior to beginning our public scoping process for proposed roads in IRAs, and before we make key NEPA decisions, we will meet with your staff to ensure you agree that our decisions are consistent with the guidance in Interim Directive, as modified by your four changes.

3. If we cannot reach consensus at the staff level, I will meet with you personally to resolve outstanding issues and to ensure consistency with the guidance in Interim Directive, as modified by your four changes.

In addition to these measures, I am affirming our goal of no net increase in miles of roads in inventoried roadless areas within each national forest in California.

There are approximately 260,000 acres of National Forest IRAs in California managed by the Humboldt-Toiyabe National Forest of Region 4 and the Rogue-Siskiyou National Forest of Region 6.   I have conferred with the Regional Foresters of Region 4 and Region 6 and they are in agreement with the commitments of this letter and will manage these lands in accordance with the measures outlined in this letter.

I hope that you will find our suggestions agreeable.  We believe these measures will help protect roadless values as successfully as the Interim Directive (as modified by the four changes in your letter) until California's petition process is completed and a final rule is in place.

Sincerely,

BERNARD WEINGARDT
Regional Forester